UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------------------------------- X
                                                    :
                                                    :
IN RE: AIR CRASH DISASTER OFF THE          :
COAST OF NANTUCKET ISLAND,                 :      MD-00-1344 (BMC)
MASSACHUSETTS ON OCTOBER 31, 1999  :
                                                    :
                                                    :
-------------------------------------------------------- X

**COGAN**, District Judge.

    This case is before me on four motions: [614] defendants Egypt Air, The Boeing

Company ("Boeing"), and Parker Hannifin Corporation's ("Parker Hannifin") motion to enforce

agreements to dismiss claims made by plaintiffs in *Dmitri* Case Nos. 2, 6, 7, and 8 and *Habashy*

Case Nos. 4 and 5;[1] [617] defendants Boeing and Parker Hannifin's motion to dismiss plaintiff

Moataz Mohamed's claims for lack of capacity to sue; [620] defendants Boeing and Parker

Hannifin's motion to dismiss for failure to prosecute all claims made by plaintiffs in Case Nos. 8,

10, 13, 21, 28, 33, 38, and 40 of the *Mohamed* complaint; and [621] defendants Boeing and

Parker Hannifan's motion to dismiss for failure to prosecute all claims made by plaintiffs in

*Dmitri* Case Nos. 2, 6, 7, 8, and 12 and *Habashy* Case Nos. 4 and 5. For the reasons that follow,

the four motions are GRANTED.

## BACKGROUND

    This litigation, now ten years old, arises out of the crash of EgyptAir Flight No. 990 on

October 31, 1999 in the Atlantic Ocean approximately sixty miles from Nantucket Island; no one

survived. Numerous lawsuits were commenced against EgyptAir, Boeing and Parker Hannifin,

both in the United States and in Egypt by the families of the decedents. Among them was El-

---

[1] The case numbers, as designated by defendants, correspond to the order in which the plaintiffs and their decedents
appear in the caption of the complaint.

_Habashy, et al. v. The Boeing Company, et al._, No. 00-cv-7160 (E.D.N.Y. 2000), originally filed in the Superior Court of California, Los Angeles (hereinafter "_Habashy_"); _Dmitri, et al v. The Boeing Company, et al._, No. 01-cv-1885 (E.D.N.Y. 2001), originally filed in the Superior Court of California, Alameda County and then removed to the United States District Court for the District of California (hereinafter "_Dmitri_"); and _Moataz Mohamed, et al. v. The Boeing Company, et al._, No. 02-cv-1530 (E.D.N.Y. 2002), originally filed in the Southern District of New York and then transferred to the Eastern District (hereinafter "_Mohamed_"). The _Habashy_ case combines the claims of five families whose decedents perished in the October 1999 crash and the _Dmitri_ suit asserts claims on behalf of the same five families as _Habashy_ and adds as plaintiffs the families of nine other decedents who died in the crash. Plaintiff Moataz Mohamed asserts claims for the death of his parents, Aly Rashad Aly Mohamed and Baria Zaki Mohamed, in the _Mohammed_ case.

## DISCUSSION

### I.    Motion to Enforce Agreements to Dismiss

In 2003, the families of twelve of the decedents in _Dmitri_ and _Habashy_, upon the advice of counsel, agreed to dismiss all claims pending in the United States in exchange for payment.[2] Specifically, four separate settlement agreements executed by these plaintiffs (corresponding to four different decedents) provided that they would "dismiss with prejudice, our claims pending in the United States" arising out of the crash but would "not waive such rights as they may have

---

[2] The following plaintiffs signed settlement agreements: plaintiffs Hala Mohamed Attia Mohamed Mamoud, Mahroussa Abdel Fatah Mohamed El-Beshbishy, Takek Anwar Hosny Ibrahim, Hisham Anwar Hosny Ibrahim and Marwa Anwar Hosny Ibrahim, individually and as successors in interest to the rights of decedent Adel Anwar Hosny Ibrahim; plaintiffs Sherif Samyayad Masoud, Mona Samy Ayad Masoud and Narges Iskander Gad, individually and as successors in interest to the rights of decedent Raafat Samy Ayad Masoud; plaintiff Hoda Farouk El-Shawarbi, individually, as guardian ad litem for Mohamed Hisham Ahmed Aly Omar and Mostafa Hisham Ahmed Aly Omar, and as successors in interest to the rights of decedent Captain Hesham Omar; and Hesham Ibrahim Ahmed El-Sherbiny, individually, as guardian ad litem for Taghda Hesham Ibrahim Ahmed El-Sherbiny, and as successors in interest to the rights of decedent Maha El-Mahrouky.

to pursue legal action against Boeing and/or Parker Hannifin in Egypt." The agreements further stated that the plaintiffs "received the advice of U.S. Legal Counsel of our choice on the effect of this agreement and understand that by signing this document we waive and renounce all legal remedies which may be available to us anywhere in the world arising out of this Accident, save such remedies that may be available to us in Egypt."

Each of the agreements set forth the amount of money to be paid in attorneys' fees, with the balance to be paid directly to the plaintiffs. They were all signed in Cairo, Egypt at the offices of EgyptAir's counsel. After execution, the money was wired to counsel and to the plaintiffs. Plaintiffs accepted and retained the consideration paid to them. To date, however, they have refused to dismiss the claims. In a previously filed letter to Magistrate Judge Levy, defendants indicated that stipulations of dismissal were never filed because the parties were unable to agree on the exact wording of the stipulations. Defendants Boeing and Parker Hannifan now move to enforce the settlement agreements and dismiss the cases.

A "district court has the power to enforce, summarily on motion, a settlement agreement reached in a case that was pending before it." Meetings & Exposition, Inc. v. Tandy Corp., 490 F.2d 714, 717 (2d Cir. 1974). Settlement agreements are contracts, interpreted according to general principles of contract law; once entered into, the contract is binding and conclusive. Powell v. Omnicom, 497 F.3d 124, 128 (2d Cir. 2007). An unambiguous settlement agreement will be construed according to its terms. Suarez v. Ward, 896 F.2d 28, 30-31 (2d Cir. 1990); Cusano v. Horipro Entm't Group, 301 F. Supp. 2d 272, 277 (S.D.NY. 2004) ("When the terms of a contract are clear, the secret or subjective intent of the parties is irrelevant.") (internal citations omitted). And settlements are not lightly cast aside. Willgerodt v. Hohri, 953 F. Supp. 557, 560 (S.D.N.Y. 1997). When a party makes a deliberate, strategic choice to settle, a court cannot

relieve him of that choice simply because his assessment of the consequences was incorrect. United States v. Bank of New York, 14 F.3d 756, 759 (2d Cir. 1994). An afterthought or change of mind is not sufficient to justify rejecting a written settlement agreement. Willgerodt, 953 F. Supp at 560. Where the language used in the signed release or settlement is clear and unambiguous, summary enforcement is appropriate. Omega Eng'g v. Omega, S.A., 432 F.3d 437, 444 (2d Cir. 2005) ("A trial court has inherent power to enforce summarily a settlement agreement when the terms of the agreement are clear and unambiguous.").

The executed settlement agreements, translated into Arabic, are clear and unambiguous; their plain language dictates that in exchange for an agreed upon sum of money, plaintiffs are to dismiss their claims pending in the United States arising out of the EgyptAir crash with prejudice. Plaintiffs do not contest the meaning of the terms of the agreements or dispute their authenticity. Nor do they claim that the agreements were the product of fraud, coercion, mistake, duress or any other ground typically asserted to invalidate a settlement. Instead, in a numbered submission devoid of any legal authority, plaintiffs make the following five points: (1) defendants failed to provide "Certificates of Acknowledgement of Execution of an Instrument"; (2) the settlement amounts have been redacted on the agreements; (3) plaintiffs were not "under the impression" that their cases were settled as evidenced by the letters submitted to the Court in January 2008 and January of 2009; (4) families of other victims received similar payments without dismissing their cases; and (5) no evidence of full and final payments has been shown. I address each of these contentions, none of which have any merit, in turn.

Plaintiffs' intimation that the agreements are invalid because they did not contain Certificates of Acknowledgment is wrong. I am aware of no authority, and plaintiffs have not pointed to any, that makes a Certificate of Acknowledgement of Execution an indispensable

document for the enforcement of a fully executed settlement agreement. Under New York law, Certificates of Acknowledgment are used, mostly with real property deeds, to prove the due execution of an agreement. In that context, the existence of a Certificate of Acknowledgment by a notary public gives rise to a presumption of due execution that can only be rebutted upon "a showing of clear and convincing evidence to the contrary." Spilky v. Bernard H. La Lone, Jr. P.C., 227 A.D.2d 741, 742, 641 N.Y.S. 2d 916 (3rd Dept. 1996). Plaintiffs have not even asserted, let alone proven, that the signatures on the settlement agreements are not their signatures. I have no reason to question the authenticity of the settlement agreements and do not need a Certificate of Acknowledgment to enforce them. See e.g., Britto v. Salius, No. 08-cv-5833, 2010 WL 93108, at *1 (2d Cir. Jan. 12, 2010) (rejecting plaintiff's assertion that the settlement agreement was incomplete because plaintiff did not sign a general release form and did not formally move for voluntary dismissal of the case).

In a similar vein, plaintiffs argue that no evidence of final payment has been shown. Plaintiffs do not maintain, by affidavit or otherwise, that final payment has not been *made*, however. Indeed, defendants in their reply submission attach the actual written confirmations of payment. The confirmations serve both to defeat plaintiffs' challenge and to undermine any suggestion that the plaintiffs did not agree in 2003 to the settlement amount. New York courts recognize that the strongest indication that a party has assented to settlement is when, as here, that party accepts the benefits of the settlement without reservation. Palumbo v. Norstar Bank Upstate N.Y., 212 A.D.2d 377, 622 N.Y.S.2d 263 (1st Dept. 1995) (settlement agreement enforced where the agreement was fully performed and plaintiffs accepted its benefits). Like the assertion concerning the lack of a Certificate of Acknowledgment, plaintiffs' belated attempt to attack the technical sufficiency of the agreements is unavailing.

Next, plaintiffs point to the two letters submitted to the Court in January of 2008 and 2009 as evidence that they were never under the impression that that their cases had settled. The argument suffers from at least one fundamental flaw; all but two of the plaintiffs who signed the letters are plaintiffs in cases not presently before the Court on this motion to enforce the settlements. The letters thus have extremely limited probative value. With respect to the two plaintiffs who signed the 2003 agreements and the January 2009 letter, the letter states:

> Plaintiffs who signed a temporary plain paper as a token of consenting to any settlement, later on and after consulting with a legal counsel had duly informed the insurance companies of their final disposition of refusal and rejection of their offers!! Hope the full picture is clear now.

The full picture is clear from the settlement agreements. Plaintiffs agreed, upon the advice of counsel, to settle their claims. Plaintiffs' assertion years later that they were not "under the impression" that their claims were settled is of no consequence and cannot change the unequivocal language of the agreements. Since the terms of the settlement are clear, the parties' subjective intent is irrelevant. A party who executes a contract is presumed to know and understand its contents and to assent to them. Choung v. Allstate Ins. Co., 283 A.D.2d 468, 724 N.Y.S.2d 882 (2d Dept. 2001). Plaintiffs' apparent change of heart and alleged confusion are insufficient to invalidate these agreements. See Willgerodt v. Hohri, 953 F. Supp. 557, 560 (S.D.N.Y. 1997); Lee v. Boro Realty, 39 A.D.3d 715, 832 N.Y.S.2d 453 (2d Dept. 2007) (plaintiff's conclusory and unsubstantiated claim that she intended her medical release to mean something other than the unambiguous stated meaning of the release insufficient to void the release).

Nor am I persuaded by plaintiffs' conclusory assertion that "[f]rom best information and belief, all families of the victims received similar payments in 2000 and signed similar

Agreements without dismissing their cases." Those agreements are not before me on this motion and I see no reason to consider them.

Finally, plaintiffs' passing mention that the settlement amounts are redacted has no merit. If the Court were charged with assessing the fairness, rather than the enforceability of these settlements, the redactions would be troubling. But when a case is settled as a result of a private agreement between the parties, the court "normally plays no role whatever, standing indifferent to the terms the parties have agreed to." Janus Films, Inc. v. Miller, 801 F.2d 578, 582 (2d Cir. 1986). Plaintiffs have not suggested that they were unaware of the amounts at the time the agreements were executed or that defendants never provided unredacted copies. Indeed, defendants aver that "had such a request been made, Defendants' counsel would certainly provide Plaintiffs' new counsel with unredacted copies of the 2003 Agreements." That the copies submitted to the Court have redacted settlement amounts and redacted identifying information hardly supports invalidating the settlement agreements.

For these reasons, the claims covered by the 2003 agreements are dismissed.[3]

II.      Motion to Dismiss Mohamed Claims

Mohamed, et al. v. Boeing Co. et al., 02-cv-1787 (E.D.N.Y. 2002), was filed initially in the Southern District of New York on October 30, 2001 by plaintiff Moataz Mohamed "individually and as personal representative" of the estates of his parents, Aly Rashad Aly Mohamed and Baria Zaki Mohamed, who perished in the crash. Defendants move to dismiss plaintiff Mohamed's claims, arguing that he lacks capacity to sue.

Defendants' position is fairly straightforward. They assert that the Death on the High Seas Act ("DOHSA") governs this dispute; that under the DOHSA, only a court-appointed

---

[3] The dismissal of the claims subject to the 2003 settlement agreements leaves only one claim in the *Dmitri* and *Habashy* cases: Case No. 12 in the *Dimitri* action.

personal representative of the deceased may bring suit for wrongful death; and that plaintiff Mohamed, who only became a personal representative of his deceased parents' estate almost seven years after the limitations period expired, lacks the capacity to sue. I agree with defendants. Plaintiff Mohamed's DOHSA claims are dismissed.

Where, as here, an airplane crash occurs on the high seas, DOHSA supplies the substantive United States law.[4] Zicherman v. Korean Air Lines Co., 516 U.S. 217, 116 S. Ct. 629 (1996). DOHSA provides that,

> [W]henever the death of a person shall be caused by wrongful act, neglect or default occurring on the high seas beyond a marine league from the shore of any state…the personal representative of the decedent may maintain a suit for damages in the districts courts of the United States, in admiralty, for the exclusive benefit of the decedent's wife, husband, parent, child or dependant relative against the vessel person, or corporation which would have been liable if death had not ensued.

45 U.S.C. § 761.

A "personal representative of the decedent must be a person empowered by law to administer the decedent's estate." See Complaint of Cosmopolitan Shipping, Co., 453 F. Supp. 265, 266 (S.D.N.Y. 1978) ("The term personal representative requires some designation by a court that the individual seeking to prosecute the wrongful death action is an administrator of the decedent's estate.") Only the personal representative has a cause of action under DOHSA, not the beneficiaries named in the statute or any other beneficiary of the decedent's estate. Cruz v. Korean Air Lines Co., 838 F. Supp. 843, 846-47 (S.D.N.Y. 1993) (ruling that children

---

[4] DOHSA is the exclusive remedy in cases of wrongful death occurring on the high seas and applies in this case. In re Air Crash off Long Island, 209 F.3d 200 (2d Cir. 2000). I see no merit to plaintiff Mohamed's attempt to raise choice of law issues by suggesting, in a letter submitted by his former attorneys, that whether his parents were residents of the United States "is open to serious question." Plaintiff has previously represented to this Court without equivocation that "my parents were living with me in 1999 in Irvine, CA and I have applied for, and received approval notices for both parties' Green Card Alien resident status as of Nov. 1999." He has also insisted that he "will not accept . . . any course that treats our case as Egyptians" and requested that his family "be treated as a US [sic] family that lost CA residents in this heinous crash." Plaintiff's new assertion about his parents' residence, without any legal argument, seems nothing more than a belated attempt at circumventing the personal representative requirement of DOHSA now that defendants have moved to dismiss.

beneficiaries have no right to sue on their own behalf). The personal representative must commence the action within the three year DOHSA statute of limitations period, which accrues at the time of death. 46 U.S.C. § 30106; <u>Public Adm'r of County of New York v. Angela Compania Naviera, S.A.</u>, 592 F.2d 58 (2d Cir. 1979); <u>O'Neill v. Cunard White Star Ltd.</u>, 69 F. Supp. 943, 945 (S.D.N.Y. 1946). The two-year period will only be tolled if plaintiff can demonstrate a strong justification for the delay. <u>Public Adm'r of New York</u>, 592 F.2d at 64.

I do not see a strong justification for the delay. Plaintiff filed his complaint on October 30, 2001, in which he alleged that he was suing defendants "individually and as personal representative" of his parents' estate. Emails submitted by defendants indicate that shortly after defendants filed their answer in 2002, which asserted lack of capacity as an affirmative defense, plaintiff Mohamed's attorney wrote to plaintiff enclosing a "Petitioner for Probate" for plaintiff to sign so that he could be "promptly appointed administrator." Yet plaintiff Mohamed was first appointed personal representative of his parent's estate on September 14, 2009, nearly ten years after his parent's death on October 31, 1999. Clearly, the process of appointing plaintiff representative of his parents' estate was not completed within the statute of limitations.

In a submission filed on June 27, 2008, plaintiff explained that the reason he had never been appointed personal representative was that that his lawyer: "started the process to establish a CA estate for my parents with myself as the trustee, however they never completed that process, nor did they file the forms before the CA superior court, although I signed all the forms they sent me in 2001."

Unfortunately for plaintiff, his attorney's failure to complete the appointment process when it should have been completed does not justify tolling the statute of limitations period. Having chosen to retain his attorney, plaintiff is responsible for his attorney's negligent conduct

or bad advice in connection with the action. See <u>Chira v. Lockheed Aircraft Corp.</u>, 634 F.2d 664, 666 (2d Cir. 1980) ("Absent a truly extraordinary situation...the client is not excused from the consequences of his attorney's nonfeasance."). Plaintiff voluntarily chose his attorney as his representative and cannot avoid the consequences of his attorney's omissions. See <u>Link v. Wabash R.R. Co.</u>, 370 U.S. 626, 633-34, 82 S. Ct. 1386, 1390-90 (1962). Moreover, plaintiff's subsequent efforts to obtain personal representative status since 2001 indicate that he was personally aware that he did not have the right to bring the action without first becoming a representative of his parents' estates.

Contrary to plaintiff's assertions, Rule 17(a) does not relate back his recent appointment as personal representative to the commencement of the action. Plaintiff misapprehends the purpose of relation back, which, as the Advisory Committee notes, is "intended to prevent forfeiture when determination is difficult or when an understandable mistake has been made." Fed. R. Civ. P. 17(a) advisory committee's note (1966)[5]; See also <u>Del Re v. Prudential Lines, Inc.</u>, 669 F.2d 93 (2d Cir. 1982) (emphasizing that the function of Rule 17(a) is not to create substantive rights but to avoid forfeiture when it is unclear at the time the action is filed who had the right to sue). Rule 17(a) has no application to plaintiff Mohamed, who filed this lawsuit when he had no cause of action and later obtained the cause of action through his appointment as a representative. See <u>Cao v. Nguyen</u>, No. 92-1669, 1992 WL 373563, *2 (E.D. La. Dec. 7, 1992) (recently appointed administratix could not relate her appointment back to the initial filing

---

[5] In fact, after the explanation of how Rule 17(a) is meant to apply, the Advisory Note uses an illustration, surprisingly close to the instant case, of how the rule is *not* meant to apply. The Note states that Rule 17(a) "does not mean, for example, that, following an airplane crash in which all aboard were killed, an action may be filed in the name of John Doe (a fictitious person), as personal representative of Richard Roe (another fictitious person), in the hope that at a later time the attorney filing the action may substitute the real name of the real personal representative of a real victim and have the benefit of suspension of the limitation period."

of her DOHSA claim since she was aware, when she sued, who the proper party to bring suit was).

Finally, I disagree with Mohamed that defendants have waived their right to challenge his capacity to sue by failing to raise it before this motion. Federal Rule of Civil Procedure 9(a) requires that the lack of capacity defense be raised "by a specific denial, which must state any supporting facts that are peculiarly within the parties' knowledge." Fed. R. Civ. P. 9(a). The capacity defense is an affirmative defense, and can be waived if not raised "in a timely matter, i.e., at the outset of the lawsuit." Pressman v. Estate of Steinvorth, 860 F. Supp. 171, 176 (S.D.N.Y. 1994).

Defendants asserted lack of capacity to sue as an affirmative defense in their answer to the *Mohamed* complaint at the beginning of the lawsuit. They were under no obligation to move to dismiss at an earlier stage having previously preserved the defense, particularly in light of the protracted nature of these proceedings. Defendants note, and I find it significant, that between 2002 when defendants filed their answer and 2009 when defendants again raised plaintiff's lack of capacity in a status letter to the Court, defendants did not move to dismiss because plaintiff Mohamed took no action in the litigation which would have put his capacity to sue at issue.

III.    Failure to Prosecute

The remaining two motions are defendants' motion to dismiss the plaintiffs in Case Nos. 8, 10, 13, 21, 28, 33, 38, and 40 of the *Mohamed* complaint and remaining plaintiffs in Case No. 12 of the *Dimitri* case (hereinafter "Kassem plaintiffs"). Both motions are based on plaintiffs' failure to prosecute.

Dismissal for failure to prosecute, pursuant to Fed. R. Civ. P. 41(b), is a matter committed to the sound discretion of the district court. Lydell Theatre Corp. v. Loews Corp.,

682 F.2d 37, 43 (2d Cir. 1982). That said, it is "a harsh remedy to be utilized only in extreme situations." Theilman v. Rutland Hospital, Inc., 455 F.2d 853, 855 (2d Cir. 1972) (per curiam). The Second Circuit has identified five factors to consider on a motion to dismiss for failure to prosecute: (1) the duration of plaintiff's failures; (2) whether plaintiff received notice that further delays would result in dismissal; (3) whether defendant is likely to be prejudiced by further delay; (4) whether an appropriate balance has been struck between alleviating the court's calendar congestion and protecting the litigants' due process rights; and (5) whether lesser sanctions would be appropriate. United States ex rel. Drake v. Norden Sys., Inc., 375 F.3d 248, 255 (2d Cir. 2004). Not all of the factors need to be present to warrant dismissal, and they apply regardless of whether plaintiff is represented by counsel or proceeding *pro se*. Doe v. City of New York, No. 02-cv-10298, 2004 WL 2397191, at *2 (S.D.N.Y. Oct. 25, 2004).

Having closely considered the five factors, I find dismissal appropriate. The fact that this litigation has dragged on for over nine years and plaintiffs are still only in the preliminary stages of discovery makes this one of the extreme circumstances warranting the harsh sanction of dismissal.

1. Duration of Failures

The relevant inquiry for the first factor is twofold: (1) whether the plaintiff is at fault for failing to prosecute, and (2) whether the plaintiff's failures were of significant duration. Norden Sys., Inc, 375 F.3d at 255. There is no bright-line rule or "magic number" of months which constitutes a significant duration, Lopez v. Catholic Charities of Archdiocese of New York, No. 00-cv-1247, 2001 WL 50896, at *4 (S.D.N.Y. Jan 22, 2001), but the Second Circuit has previously found six months delay to be of sufficient duration to warrant dismissal, Chira v. Lockheed Aircraft Corp., 634 F.2d 664, 666-68 (2d Cir. 1980), and courts within the Second

Circuit have ruled that a delay between five and ten months "falls comfortably within the time frame" necessary to dismiss. Peters-Turnbull v. Bd. of Educ., No. 96-cv-4914,1999 WL 959375, at *3 (S.D.N.Y. 1999).

The *Mohamed* and *Dmitri* cases have been pending since 2001 and 2000, respectively. The first factor weighs heavily in favor of dismissal in both cases.

### a. *Mohamed*

In *Mohamed*, plaintiffs brought suit on October 31, 2001, nearly two years after the crash giving rise to their claims. At the time, plaintiffs' MDL steering committee had agreed to stay liability discovery pending resolution of EgyptAir's forum non conveniens motions and motions to dismiss certain claims under Article 28 of the Warsaw Convention. The motions were decided August 16, 2004. From that date in 2004 until February 28, 2008, over three and a half years, when plaintiffs' counsel moved to withdraw, plaintiffs took no action in these cases.

Once plaintiffs' counsel moved to withdraw, then-Magistrate Judge Matsumoto ordered plaintiffs to inform the Court whether they consented to the motion. They did, on June 27, 2008, and requested 60 days to seek new counsel. Judge Matsumoto then gave plaintiffs until September 24, 2008. That deadline, the first of many plaintiffs would fail to meet, came and passed. Judge Levy held a status conference on October 6, 2008. Plaintiffs did not attend. Judge Levy held another status conference on December 15, 2008. Again, none of the plaintiffs attended. On January 14, 2009, plaintiffs wrote to the Court requesting an additional 60 days to find counsel. Judge Levy gave plaintiffs until March 20, 2009 to find an attorney. They did not find one. On March 20, 2009, plaintiffs requested an additional 60 days. They did not find an attorney within 60 days. Finally, on July 15, 2009, an attorney, Thomas McLarty, participated in a status conference call with the Court and indicated that he was considering representing

plaintiff Moataz Mohamed. Judge Levy gave Mr. McLarty until August 31, 2009 to file an appearance. That deadline passed. Finally, on October 25, 2009, over a year and a half after the deadline first set by Judge Matsumoto for plaintiffs to find a new attorney, nearly five years after the EgyptAir's motions were denied, and after defendants had moved to dismiss for failure to prosecute, Mr. McLarty filed notices of appearance on behalf of the plaintiffs in the *Mohamed* case.

These delays were unquestionably of significant duration. See <u>Samman v. Conyers</u>, 231 F.R.D. 163, 166 (S.D.N.Y. 2005) (finding significant duration where a new attorney wrote the Court a letter indicating he was considering representing plaintiff more than two years after the amended complaint was filed and more than ten months since plaintiff's original attorney withdrew). They are far longer than delays that have typically supported dismissal in other cases. <u>Chira v. Lockheed Aircraft Corp.</u>, 634 F.2d at 666-68 (six-month delay); <u>Lyell Theatre Corp v. Loews Corp.</u>, 682 F.2d 37, 42 (2d Cir. 1982) (noting that delays supporting dismissals have ranged from a period of months to a period of years).

Part of the delay was unavoidable. The EgyptAir non conveniens and motions to dismiss took until 2004 to fully brief and decide. But since that date, August 16, 2004, plaintiffs are to blame for the delay. And their argument that the failure to prosecute during that time was caused by "incapable previous counsel" has no merit. Second Circuit caselaw clearly holds that a "plaintiff cannot escape responsibility for failing to prosecute his claim even if his attorney is the source of the delay." <u>Europacific Asset Mgmt., Corp. v. Tradescape Corp.</u>, 233 F.R.D. 344 (S.D.N.Y. 2005) (citing <u>Chira v. Lockheed Aircraft Corp.</u>, 634 F.2d at 666.

In addition to their "incapable" attorneys, plaintiffs have offered the following explanation for their failure to prosecute this case:

Plaintiffs were previously represented in numerous circumstances in which information was given to the Plaintiff and, because of confusion, significant delays in the litigation of their cases occurred. Many Plaintiffs thought their claims had already been prosecuted, or worse dismissed. Once Plaintiffs' previous counsel withdrew or were terminated by their clients, Plaintiff began seeking out representing [sic] all while representing themselves *pro se*. As this Court is aware, a great responsibility and effort is necessary to fully litigate a case, especially in Federal Court concerning an airplane crash. No one Plaintiff is a lawyer or possesses any legal background necessary to represent him or herself.

The Court understands that the plaintiffs were proceeding *pro se* once counsel withdrew in June 2008 and that litigating in federal court for non-lawyers can be confusing. But even plaintiffs who do not have lawyers may see their cases dismissed if they continue to delay their cases. See Livecchi v. United States Dep't House & Urban Develop, 153 Fed. Appx. 16, 2005 WL 2813834, *1 (2d Cir. 2005). Judge Matsumoto plainly warned plaintiffs after counsel withdrew that if they could not find counsel, they would be required to prosecute the case *pro se*. They have not done so. Plaintiffs have not attended case management hearings or status conference by telephone or in person. They have propounded no discovery.[6] The contention that they were confused all these years seems disingenuous in light of their failure to participate at all in these proceedings.

Indeed, plaintiffs' failure to propound discovery requests throughout the pendency of this motion and the confusion newly retained counsel has had in both filing notices of appearances and in responding to defendants' motion, convince me that the future of this case would look much like its past; repeatedly missed deadlines followed by untimely requests to the Court for additional time.[7]

---

[6] Plaintiffs' assertion that the parties reached an agreement staying discovery after EgyptAir's motions were decided is refuted by defendants and unsupported either in plaintiffs' papers or in the Court record.

[7] It is worth noting that Mr. McLarty's submission in opposition to defendants' motion to dismiss plaintiff Mohamed's claim has no substance of its own. Instead, it is a one page motion, purporting to incorporate by

For the *Mohamed* plaintiffs, the first factor militates strongly in favor of dismissal.

  b. *Dmitri Case No. 12*

The *Dmitri* Complaint was filed in California state court, Alameda County, before the *Mohamed* complaint on October 31, 2000. As in *Mohamed*, the MDL steering committee agreed to stay liability discovery pending the Court's rulings on EgyptAir's motions. Between the date when the EgyptAir motions were decided on August 16, 2004 and the date when counsel for the Kassem plaintiff's filed their motion to withdraw on October 12, 2007, citing irreconcilable differences, plaintiffs sought no discovery and took no action to prosecute the case. In her Report and Recommendation dated July 22, 2008, Judge Matsumoto recommended that counsel be allowed to withdraw and stated that she "fully informed plaintiffs that should they not obtain replacement counsel and decide to proceed *pro se* 'they must be aware that they will be obligated to prosecute their claims.'" She recommended that plaintiffs be given until September 24, 2008 to find new counsel to appear. As in *Mohamed*, that deadline passed without contact from the Kassem plaintiffs. Then, on January 14, 2009, the Kassem plaintiffs wrote to the Court requesting two months to "complete the procedures of hiring an attorney." As that deadline neared, on March 19, 2009, Kassem plaintiffs again requested an additional sixty days.

  That was the last the Court heard from the Kassem plaintiffs. They did not participate in the status conferences held before Magistrate Judge Levy on April 30, July 15 or September 8, 2009. On October 25, 2009, after defendants filed their motion to dismiss for failure to prosecute, Mr. McLarty filed a notice of appearance for the Kassem plaintiffs.

---

reference an October 14, 2009 letter attached as an exhibit, written by the Nolan Law Group, plaintiffs' former attorneys of record. The submission reflects either very little time put into the case, a lack of familiarity with federal court practice, or a curious attempt to circumvent Rule 11 which requires "every pleading, written motion, and other paper" to be "signed by at least one attorney of record in the attorney's name..." Fed. R. Civ. P. 11.

Like the *Mohamed* plaintiffs, the delay in prosecuting the case for the Kassem plaintiffs

has been significant. Unlike the *Mohamed* plaintiffs, however, the Kassem plaintiffs' opposition

to the defendants' motion for failure to prosecute and explanation for the delay is virtually

unintelligible. Though labeled "Plaintiffs submit Response to Defendant's Motion to Dismiss

for Failure to Prosecute," the document is entirely concerned with defendants' motion to enforce

the 2003 settlement agreement and is devoid of any explanation for the Kessem plaintiffs' failure

to prosecute since the Court's decision on the EgyptAir motions. Seeing none, I find that the

fault for the delay since the 2004 EgyptAir decisions rests with them.

For the Kassem plaintiffs, the first factor also points towards dismissal.

2. <u>Notice of Dismissal</u>

The Second Circuit requires that plaintiffs receive adequate notice that the case could be

dismissed due to inaction. <u>Martens v. Thomann</u>, 273 F.3d 159, 180-81 (2d Cir. 2001).

Here, there is no dispute that both the *Mohamed* and Kassem plaintiffs received notice

that the case could be dismissed. By order dated June 3, 2008, Judge Matsumoto warned

plaintiffs that if they consented to the withdrawal of counsel, they would "be obligated to

prosecute their clams *pro se* or risk dismissal pursuant to Federal Rule of Civil Procedure 41."

Again in her Report and Recommendation Judge Matsumoto reiterated that she "fully informed

plaintiffs that should they not obtain replacement they must be aware that they will be obligated

to prosecute their claims or risk dismissal pursuant to Federal Rule of Civil Procedure 41." Far

less formal notice is required to fulfill this requirement. <u>See Peart v. New York</u>, 992 F.2d 458

(2d Cir. 1993) (ruling that the Court's pre-trial conference admonition that the case would be

dismissed if plaintiff did not appear for trial is sufficient for 41(b) purposes).

In response, the *Mohamed* plaintiffs concede that they were made aware of Rule 41(b) dismissal but argue that they had no "knowledge of the extent and severity of Rule 41 to their claims." I find the argument unavailing.

Judge Matsumoto instructed plaintiffs that if they failed to obtain counsel they would be "obligated to prosecute their claims *pro se* or risk dismissal." This clearly conveyed the likely consequences of prosecuting their claims. See, e.g., Edwards v. INS, 59 F.3d 5, 8 (2d Cir. 1995) ("[P]ro se litigants generally are required to inform themselves regarding procedural rules and to comply with them."). The word "dismissal" is not complicated. Indeed, after Judge Matsumoto's Order of June 3, 2008, plaintiffs in the *Mohamed* case filed a letter with the Court regarding their retention of a legal advisor. Nowhere in that letter or in any affidavits accompanying plaintiffs' instant opposition to the motion to dismiss for failure to prosecute do they suggest they were confused with respect to Judge Matsumoto's admonition. Even *pro se* litigants have "an obligation to comply with court orders," and "must suffer the consequences" when they are ignored. McDonald v. Head Criminal Court Supervisor Officer, 850 F.2d 121, 124 (2d Cir. 1988).

3. Prejudice to Defendants

The third factor to consider is whether the defendants are "likely to be prejudiced by further delay." Prejudice to defendant may be presumed where a delay in prosecution is neither moderate nor excusable. Peart, 992 F.2d at 462. Delays of considerable length make likely the chance that "witnesses' memories have faded and that witnesses who might once have been available may not be found." See Dodson v. Runyon, 957 F. Supp. 465 (S.D.N.Y. 1997) (eleven-year delay caused prejudice); Livecchi v. U.S. Dept. of Housing and Urban Development, 153 Fed. Appx. 16, 2005 WL 2813834 (2d Cir. 2005) (thirteen-year delay

prejudicial); see also Lukensow v. Harley Cars of New York, 124 F.R.D. 64, 67 (S.D.N.Y. 1989) (two-year delay "with no end in sight" evidence of prejudice to defendants).

Defendants' ability to defend this litigation has been severely compromised by plaintiffs' delays. As noted, some of the delay is due to the length of time it took to resolve EgyptAir's motions. But the prejudice to defendants, now eleven years from the date of the accident in question, cannot be understated. The investigation of the crash was completed on March 25, 2002. In both the *Mohamed* and *Dmitri* cases there is a strong likelihood that the witnesses who can be located will have faded or hazy memories and that any remaining physical evidence will be hard to find. More concretely, defendants explain that the EgyptAir 990 investigation included analysis of radar returns, cockpit voice recordings, the data from the aircraft's digital flight data recorder, visual and metallurgical inspections of components recovered from the wreckage, flight simulation studies, component bench tests, aircraft ground tests of simulated failures and human factors studies. Most of this work was done between the time of the crash and the issuance of the investigation report in March 2002. Since then, many of those involved in the investigation, including the Chairman of the National Transportation Safety Board, have moved on to other jobs.

Plaintiffs are just beginning to investigate this eleven year old crash. Their opposition to this motion, in which they ask to initiate discovery serves only to underscore the fact that if this litigation were to move forward, there would be no end in sight.

The third factor strongly favors dismissal.

4. Balance between Calendar Congestion and Due Process Rights

The fourth factor requires the court to consider the balance between calendar congestion and the plaintiff's right to present his or her own case. Norden Sys., 375 F.3d at 257. A court

"must not let its zeal for a tidy calendar overcome its duty to justice. Davis v. United Fruit Co. 402 F.2d 328 (2d Cir. 1968). In assessing the fourth factor, the court considers the type of delay perpetrated by plaintiffs. If the delay was "silent and unobtrusive rather than vexatious and burdensome," meaning, plaintiff "did not make submissions required by the court" rather than "swam[ping] the court with irrelevant filings," the fourth factor tends to favor the plaintiff. LeSane v. Hall's Sec. Analyst, Inc., 239 F.3d 206, 210 (2d Cir. 2001). There must be "compelling evidence of an extreme effect on court congestion before a litigant's right to be heard is subrogated to the convenience of the court." Lucas v. Miles, 84 F.3d 532, 535 (2d Cir. 1996).

Although plaintiffs' inaction may have caused the Magistrate Judges to conduct status conferences and scheduling conferences and this Court to issue several orders, the overall effect on docket congestion has not been significant. But that does not tip the scales plaintiffs' way, since they have been given numerous opportunities to prosecute this case and have repeatedly failed to do so. Dodson v. Runyon, 957 F. Supp. at 470 ("any claim that plaintiff's due process rights were violated thus cannot prevail because the delay and resultant dismissal of plaintiff's case are of his own making").

The fourth factor too, although perhaps not as strongly as the others, points towards dismissal.

### 5. Consideration of Lesser Sanctions

Lastly, a district court must consider whether sanctions less severe than dismissal would be effective. Shannon v. GE, 186 F.3d 186 (2d Cir. 1999). Unfortunately, no other sanction is adequate here. There is no point in subjecting defendants to the cost and delay that alternative sanctions would likely produce. This case has not progressed past the point of initial discovery

and plaintiffs' past inaction gives the Court no reason to believe that granting them another chance to prosecute this case would serve any useful purpose. Where prior warnings of dismissal and repeated extensions of deadlines do not result in better conduct, dismissal is favored. Samman v. Conyers, 231 F.R.D. 163, 2005 WL 1414393, at *4 (S.D.N.Y. 2005). Prior warnings and repeated extensions of the deadlines have not resulted in better conduct from the plaintiffs. Monetary sanctions would prove difficult, if not impossible to enforce as many of the plaintiffs reside in Egypt. Dismissal is therefore appropriate.

## CONCLUSION

For the foregoing reasons, defendants' motions are granted and plaintiffs' claims are dismissed.

The Clerk of the Court is directed to mail a copy of this Memorandum Decision and Order to *pro se* parties.

**SO ORDERED.**

/Signed by Judge Brian M. Cogan/

U.S.D.J.

Dated: Brooklyn, New York
March 29, 2010